IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRUCE M. WHITE                       :

v.                                   :    Civil Action WMN-00-3773

BALTIMORE COUNTY, MARYLAND,          :
et al.                               :

**MEMORANDUM**

Plaintiff Bruce M. White brings this action against Baltimore County and several Baltimore County police officers pursuant to 42 U.S.C. § 1983, as well as asserting various state law causes of action. Before the Court are: Defendant Taylor's Motion for Summary Judgment (Paper No. 11) and Defendant Officer Cromer and Officer Barshinger's Motion to Dismiss (Paper No. 14). The motions are fully briefed and ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that both motions will be granted.

**I.  FACTUAL BACKGROUND**

The facts of this case are undisputed. On January 6, 1998, Officer Barshinger applied to the District Court for Baltimore County, Maryland for a "no knock" search warrant to search the premises of 33 Seminary Avenue, Lutherville, Maryland, where Plaintiff resided. Judge Barbara Jung signed the warrant, authorizing Officer Barshinger and other members of the Baltimore County Police Department to enter Plaintiff's home unannounced

and to search for and seize certain weapons that Plaintiff allegedly had in his possession.  Plaintiff was a convicted felon and was prohibited under Maryland Law from owning or possessing any firearms.

On January 7, 1998, at approximately 6:00 a.m., Defendants Cromer and Barshinger, along with other members of the Baltimore County Police Department, executed the search warrant.  In accordance with the authorized "no knock" warrant, Defendants Cromer and Barshinger rammed the door and entered the home.  Upon entry, Officer Cromer found Plaintiff holding a gun and pointing it toward the police officers.  At that point, Officer Cromer fired his weapon and shot Plaintiff three or four times.  After Plaintiff had been disabled, the police officers searched the home and seized an M-14 rifle.  Defendant Taylor's involvement in the case consisted of investigating the matter after the shooting had occurred.

## II.  LEGAL STANDARDS

### A. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor.  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  The court should not dismiss the

complaint "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Id. (quoting Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988)).

**B. Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In making its decision, the court must "draw all justifiable inferences in favor of the non-moving party." Mason v. New Yorker Magazine, 501 U.S. 496, 520 (1991)(citations omitted). In order to withstand the motion for summary judgment, a non-moving party must produce sufficient evidence from which the finder of fact could reasonably find for him or her. See Anderson, 477 U.S. at 252. If the non-moving party does not provide contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

**III. DISCUSSION**

Section 1983 of Title 42 the United States Code provides

3

that an individual who has been deprived of any right, privilege, or immunity secured by the United States Constitution or by the federal law has the right to sue in court for redress.  Under the doctrine of qualified immunity, government officials performing discretionary functions are not liable for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1981).  The purpose of qualified immunity is to ensure that government officials "reasonably can anticipate when their conduct may give rise to liability by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right[.]'"  <u>Solis v. Prince George's County</u>, 153 F. Supp. 2d 793, 800 (D. Md. 2001) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 270 (1997)).  In determining whether an officer is entitled to qualified immunity, the Court must undertake a three-part analysis.  <u>Solis</u>, 153 F. Supp. 2d at 800.  The analysis requires the court to: (1) identify the right that was allegedly violated; (2) decide whether the right was clearly established at the time of the alleged violation; and (3) determine whether a reasonable person in the officer's position would have known that his actions were violating that right.  <u>Id</u>.

4

**A. Fourth Amendment--Unreasonable Search & Seizure**

Plaintiff contends that the execution of the "no knock" search warrant constituted an unreasonable search and seizure under the Fourth Amendment of the United States Constitution. Defendants assert in their motions that the search was valid and that, in any event, they are entitled to qualified immunity for their actions in executing the search warrant.

In order to state a cause of action under § 1983, a plaintiff must demonstrate some "injury consequent upon violation of his constitutionally protected rights." Donlan v. Smith, 662 F. Supp. 352, 357 (D. Md. 1986) (quoting White v. Boyle, 538 F.2d 1077, 1079 (4th Cir. 1976)). A plaintiff has no cause of action against a police officer who acts within the scope of his authority under a valid search warrant. See LaBar v. Royer, 528 F.2d 548 (5th Cir. 1976). Here, the undisputed facts show that the search conducted by Officer Barshinger, Officer Cromer, and other members of the Baltimore County Police Department on January 7, 1998 was conducted pursuant to a valid warrant.

Defendant Barshinger applied for the warrant on January 6, 1998. The affidavit executed by him in support of the warrant stated that Officer Barshinger had interviewed James Lee Carter, an inmate at the Baltimore County Jail, who provided him with information regarding certain firearms in possession of

Plaintiff.  Carter stated that he had seen Plaintiff in possession of the firearms at least four times within the previous eight months.  The affidavit further stated that Plaintiff White had been convicted of a felony and was prohibited under Maryland law from owning or possessing any firearms.  Finding that probable cause existed, Judge Barbara Jung of the District Court for Baltimore County signed a warrant authorizing a "no knock" search and seizure of the firearms, possession of which may be evidence of violations of the Annotated Code of Maryland, Article 27, Section 445(d) (making it illegal for a person who has been convicted of a felony to possess a firearm) and Section 379 (making it illegal to possess a firearm that has not been registered).  See Simons v. Montgomery County Police Officers, 762 F.2d 30, 32-33 (4th Cir. 1985) (noting that exigent circumstances justify the failure to "knock and announce"); United States v. Jackson, 585 F.2d 653, 662 (4th Cir. 1978) (noting that the failure to "knock and announce" may be justified if there is a likelihood that the occupants will resist the police); Sabbath v. United States, 391 U.S. 585, 591 (1968) (recognizing that exigent circumstances include danger to police officers).

Plaintiff also argues that, despite the fact that the warrant authorized Defendants to enter his home unannounced, they

should have conducted the search in a different manner. By its definition, the "no knock" warrant authorized the police officers to enter Plaintiff's home unannounced, and Defendants did exactly that. There was no violation of Plaintiff's constitutional rights in this regard and no further analysis is required.

Plaintiff further asserts that the confidential informant was not reliable due to his willingness to supply the police with information in exchange for a reduced sentence. Judge Jung found there was probable cause to authorize the warrant and the police officers who executed it were not required to question the Judge's probable-cause determination. See United States v. Leon, 468 U.S. 897, 921 (1984). Therefore, Plaintiff's allegations in this regard are without merit.

### B. Fourth Amendment--Excessive Force

Plaintiff alleges that Officer Cromer's actions in shooting him when entering the house constituted the use of excessive force. Any claims of excessive force in the course of an arrest are analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1988). In determining "reasonableness," the Court's inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Id. at 397 (citations omitted).

One factor relevant to an excessive force analysis is "whether the suspect poses an immediate threat to the safety of the officers or others." Id. at 396. Even if an officer mistakenly, but reasonably, believes that a suspect will fight back, he is justified in using more force than is actually necessary. Saucier v. Katz, 533 U.S. 194 (2001). Plaintiff does not deny that he pointed a weapon at Officer Cromer upon Defendants' entrance into Plaintiff's home. In light of the circumstances of the search and Plaintiff's past criminal record, the Court finds that Officer Cromer's use of force during the unannounced search was objectively reasonable because Plaintiff's actions would lead a reasonable police officer to believe that Plaintiff posed an immediate threat to their safety.

Assuming, arguendo, that Officer Cromer's use of force was excessive under the reasonableness standard of the Fourth Amendment, he would be entitled to qualified immunity, nonetheless. Unquestionably, the use of force violates the Fourth Amendment if, under the standards of reasonableness, the force is excessive. Once the Court has established that there was a constitutional right, the next inquiry is whether the right was clearly established. Saucier, 121 S.Ct. at 2156. The Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Id. (citations omitted). In making this determination of "reasonableness," the Court must make allowance for the fact that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396. Officer Cromer made a split-second decision to shoot Plaintiff upon discovery that Plaintiff was pointing a weapon at Defendants. At that moment he reasonably believed that his use of force was lawful because Defendants' lives seemed to be in peril. Because it would not be clear to a reasonable officer that Defendant Cromer's conduct was unlawful, the Court finds that he is entitled to qualified immunity under § 1983.

### C. Defendant Baltimore County

Because the County's liability is merely derivative of any liability on the part of the officers, the § 1983 claims against the County will be dismissed as well.

### IV. CONCLUSION

For the reasons stated above, the Court finds that the § 1983 claims against all defendants must be dismissed. Finding that Plaintiff's federal claims must be dismissed, the Court will decline to exercise supplemental jurisdiction over the state law claims and will dismiss this action, in its entirety. See Greer

v. Anne Arundel County, 46 F.Supp.2d 416 (D. Md. 1999). A separate order will issue.

                                           _____
                                           William M. Nickerson
                                           United States District Judge

Dated: February 27, 2002.